# IN THE OREGON TAX COURT

The OREGON COUNTRY FAIR
*v.*
DEPARTMENT OF REVENUE
(TC 2257)

Jill Heiman, Eugene, represented plaintiff.

Jerry Bronner, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered January 3, 1986.

## CARL N. BYERS, Judge.

Plaintiff appeals the denial of a property tax exemption claimed under ORS 307.130. The facts are, for the most part, stipulated and undisputed.

Plaintiff is a nonprofit Oregon corporation exempt from federal income tax under IRC § 501(c)(3) and from Oregon corporate excise taxes under ORS 317.080. While plaintiff's articles of incorporation recite that it is organized exclusively for charitable, educational or other purposes,[1] the specific purpose is found in Article II of the bylaws as follows:

> "The purpose of the corporation shall be to sponsor The Oregon Country Fair, hereinafter "the Fair," which shall be an annual event intended to educate and inform the public about choices in personal and community lifestyle through the promotion and preservation of the work of individual craftspersons, artists, artisans, musicians, and performers, displayed in a traditional fair setting, and the creation of a public forum encouraging the exchange and discussion of ideas about alternative community organization, use of economic resources, and appropriate technology." (Plaintiff's Exhibit 2.)

Plaintiff is a membership organization. Anyone who has ever participated in the fair as a guest, volunteer, been on the staff of the fair or had a booth at the fair is eligible to be a member merely upon written application. No dues or fees are required to become a member. The organization operates entirely by a large number of volunteers. Although during the fair volunteers are provided food vouchers which are redeemable at the food booths while they are working at the fair, this form of "compensation" is viewed as de minimis and incidental.

The real property, whose tax status is in question, is

---

[1] Article II of the Articles of Incorporation of Oregon Country Fair, as amended April 13, 1980, reads:

"The corporation is organized exclusively for charitable, educational or other purposes within the scope of Section 501(c)(3) of the Internal Revenue Code. Notwithstanding any other provision of these articles, the corporation shall not carry on any other activities not permitted to be carried on by an organization exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code."

being purchased by plaintiff on a contract. The property consists of approximately 242 acres of land near Veneta, Oregon. The Long Tom River meanders along a goodly portion of the edge of the property, adding to the natural setting which plaintiff desires. The land is preserved, for the most part, in its natural state, consistent with the ideological atmosphere which plaintiff seeks to create for the fair.

Surely a good color picture would be worth a thousand words in attempting to capture the spirit as well as the corporeal nature of the fair. Perhaps the best statement is that description rendered by the 1984 president of plaintiff:

"Over 110 community organizations participate; they reflect areas concerning the arts, appropriate technology, communications, economic cooperation, environmental awareness, health, human services, information networking, little people and lifelong learning, local self reliance, communities and neighborhoods, politics, recycling and spiritual concerns. There are 135 workshops provided by the organization during a three day event. There are also many demonstrations on everything from algae farming and crop growing to alternative health care, to solar and wind energy exhibits, to composting toilets and recycling systems. In addition to these organizations, there are about 1500 artists and craftspeople. Many of these people are world class artisans. The Fair seeks to provide a market environment to preserve and foster regional, cultural and artistic achievements. Another large component is the 200-300 entertainers and performers. The Oregon Country Fair seeks to promote their welfare and to acknowledge the positive impact of vaudeville, folk music and other quality entertainment in our society by providing exposure for regional musicians and performers. The purpose of the Fair, in my own words, is to provide a three day annual outdoor festival celebrating, nurturing and perpetuating quality arts and crafts and to provide public access to a large local network of community organizations united to uplift and improve the human experience through cooperative efforts." (Stipulated Facts, ¶ 9, at 4.)

The land in question is utilized as the site for the fair. Pathways laid out in a figure eight design encourage and permit visitors to experience the string of various booths as well as the energy park and the community village.

Plaintiff seeks exemption for the subject property under ORS 307.130 as a charitable organization. Although

plaintiff's complaint raises issues as to 1984 and 1985 tax years, the opinion and order being appealed from covers only 1982-1983 and 1983-1984 years. As to those latter years, the department denied the plaintiff's application for exemption for the first year (1982-1983) for the reason that it was not timely filed. Plaintiff's application for the subsequent year (1983-1984) was denied on the grounds that plaintiff is not a charitable organization within the meaning of the statute.

The basic issue before the court is whether The Oregon Country Fair is a charitable organization within the meaning of ORS 307.130 and whether the property is used exclusively for charitable purposes.

Although most of the facts are stipulated and agreed to by the parties, trial was had on the question of whether the fair provides admissions for the poor or those unable to pay. Evidence was also received in the form of observations of people about the fair. Based on the evidence, the court finds that generally visitors are not informed that they can gain admission to the fair if they do not have the price of admission. If they ask or indicate that they cannot pay, then the fair permits such persons to work off their admission by picking up garbage, providing entertainment or some other service.

Although the fair is highly organized and efficiently run, the testimony indicated that it does not promote a mercantile atmosphere. The atmosphere sought by plaintiff and apparently achieved is that of a loving, close community, sharing ideas and talents with a desire to live in harmony with the earth and each other. The entertainment, food, crafts, discussions and manner of organization seem consistent with this philosophical objective.

Additional facts meriting mention are that plaintiff furnishes free bus service for visitors from Eugene as a means of conserving energy. Plaintiff also recycles those waste materials that can be recycled.

The relevant portion of ORS 307.130 provides as follows:

"Upon compliance with ORS 307.162, the following property owned or being purchased by incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:

"(1)    Except as provided in ORS 748.545, only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions.

"(2)    Parking lots used for parking or any other use as long as that parking or other use is permitted without charge."

■    Numerous rules of construction, some of which have become highly refined, are required to guide the application of the statute's broad concepts. One fundamental maxim is that exemption statutes are to be strictly but reasonably construed. *Methodist Homes, Inc. v. Tax Com.*, 226 Or 298, 307, 360 P2d 293, 297 (1961). Also, exemptions are generally denied unless they are so clearly granted as to be free from reasonable doubt. *Behnke-Walker v. Multnomah County*, 173 Or 510, 521, 146 P2d 614 (1944). As will be seen below, there are numerous other rules of statutory construction, all intended to keep application of the statute within the intent of the legislature. *Oregon Stamp Society v. Commission*, 1 OTR 190, 198 (1963).

■    The word "charitable" has a two-part meaning.[2] The first part of the meaning, which deals with the nature of the act called "charitable," requires that the act be for the good or benefit of human beings. In a general sense, any conduct which tends to relieve suffering, uplift, enlighten, build or enhance people may be viewed as charitable. By contrast, the conducting of war, spreading of disease, or any other activity which tends to destroy or tear down cannot be viewed as charitable no matter how conducted.

The second part of the meaning of charitable entails the element of a gift or giving. Charity is not just feeding the hungry, clothing the naked or nursing the sick. Many businesses do just that and profit handsomely. In order to be charitable, it is essential that such conduct involve a degree of giving. As noted by the Supreme Court in *Benton Co. v. Allen et al.*, 170 Or 481, 133 P2d 991 (1943), hospitals, as such, are not necessarily public charities and enjoy no inherent exemption. Most of the judicially devised tests for determining whether an organization is charitable deals with that part of the meaning relating to the element of giving. As indicated by this court in *Salem Non-Profit Housing, Inc. v. Dept. of Rev.*, 9

---

[2] As used in ORS 307.130, the terms "benevolent" and "charitable" are deemed synonymous. *Methodist Homes, Inc. v. Tax Com.*, 226 Or 298, 309, 360 P2d 293 (1961).

OTR 265 (1982), if no gift is involved, there is no charity. In that case, this court found that a nonprofit organization's administration of federal money to provide better housing for a lower income group was lacking the element of gift. This finding is consistent with the idea that exemptions are granted to charities in part because the gift will relieve government in some way of a burden.

■     Looking first to that part of the meaning of charitable which relates to the benefiting of mankind, it is clear that the statute is not intended in the broad sense of the word. That is, while various cultural events, historical societies or other organizations may benefit mankind, they are not charitable within the strict meaning of that term.[3] For purposes of ORS 307.130, the term "charitable" must be applied in its narrow and traditional sense of relieving pain, alleviating disease or removing constraints. *Benton County v. Allen,* 170 Or 481, 485, 133 P2d 991 (1943). In this sense, plaintiff is not a "charitable" organization. Its purposes are to promote the arts and crafts, the exchange of ideas, the establishment of a community feeling of unity and enhance an earth-life harmony philosophy. All of these are unquestionably worthwhile and beneficial. Yet they cannot be said to be "charitable" as that term is used in the statute.

■     In considering the second part of the meaning of "charitable" the court finds that plaintiff is likewise deficient. In *Methodist Homes, Inc. v. Tax Com.,* 226 Or 298, 360 P2d 293 (1961), the Oregon Supreme Court set forth some six tests which are relevant in this case.[4] In applying the tests set forth

---

[3] Perhaps one reason that a narrow view of the word should be used is because of the potential for disagreement as to whether a particular activity is of benefit to mankind. A broad view of the meaning of the word would increase the number of possible organizations and activities, the social value of which may not be clear. As it is, religions which have been found to be "charitable" frequently promote opposing philosophies and conduct.

[4] These tests may be summarized as follows:

(1) Whether the receipts are applied to the upkeep, maintenance and equipment of the institution or are otherwise employed;

(2) Whether patrons receive the same treatment irrespective of their ability to pay;

(3) Whether the doors are open to rich and poor alike and without discrimination as to race, color or creed;

(4) Whether charges are made to all patients, and if made, are lesser charges

in that case and adapting them to plaintiff's activities, plaintiff fails to meet the "gift" criteria. Significantly, individuals are not admitted to the fair regardless of their ability to pay. Permitting the poor to work off the price of admission may be good philosophy, but it is not charity. Plaintiff's method of operation is comparable to a hospital which first determines whether a potential patient can pay. If the patient cannot pay, then the hospital would require some exchange of service or other consideration before the patient could be admitted to the hospital. Further, there were no adjustments made in the charges for the poor or indigent.

■ There is some evidence that donations or gifts have been made to plaintiff. (Plaintiff's Exhibit 13.) However it is not clear how much has been received as gifts or how such gifts are used. Donations alone, even if more than de minimis, are not evidence of charitable or benevolent service by the organization.

On the whole, the court finds that while plaintiffs purposes and activities may be laudable and applaudable, they are not charitable within the meaning of ORS 307.130. Defendant's Opinion and Order No. VL 84-3339 is affirmed. Defendant is to recover costs.

---

made to the poor or are any charges made to the indigent;

(5) Whether there is a charitable trust fund created by benevolent and charitably minded persons for the needy or donations made for the use of such persons; and

(6) Whether the institution operates without profit or private advantages to its founders and the officials in charge.