DECISION
This matter is before the court on cross-motions for summary judgment. Plaintiff appeals Defendant's denial of the property tax exemption provided to charitable organizations under ORS 307.130, for tax year 2008-09. Oral argument was held January 14, 2010. Plaintiff was represented by Robert T. Manicke, Stoel Rives LLP, Portland, Oregon. Defendant was represented by Vance M. Croney, Benton County Counsel. Joint Exhibits A1 through 16P, numbered 0001 through 0142, were received February 11, 2009.
 I. STATEMENT OF FACTS
The parties agree to the following stipulated facts. On March 14, 2008, Plaintiff filed an application for real and personal property tax exemption with Defendant. (Stip Fact 5.) On the application, Plaintiff stated that, "the purpose of this organization is [to] support educational, research, and service activities of [OSU]." (Joint Ex 6F at 26.) On April 17, 2008, Defendant denied Plaintiff's application for exemption. (Stip Fact 6.) Upon being denied exemption under ORS 307.130 for tax year 2008-09, Plaintiff timely appealed to this court.
This matter involves exemption for real and personal property located in Corvallis, Oregon, which is owned by Oregon State University (OSU). (Stip Facts 1, 2.) Plaintiff leases the real property from OSU and uses the property as its headquarters. (Stip Fact 3.) Plaintiff *Page 2 
owns the personal property located at its headquarters and uses the property in its daily operations. (Stip Fact 4.) For ease of reference, both the real property and the personal property will be referred to collectively as "the property." The lease, dated June 2, 2004, provides that "[Plaintiff] is a separately incorporated foundation, recognized by [OSU] and exists for the primary purpose of supporting [OSU]." (Joint Ex 2B at 2.) The premises are "approximately 27,056 square feet of office space" to be used "for business offices, storage and other lawful purposes including but not limited to functions related to the conduct of its business." (Id. at 2, 4.)
Plaintiff was formed as an Oregon nonprofit corporation on October 15, 1947. (Stip Fact 7.) Plaintiff was first recognized as exempt from federal income taxation as described under Internal Revenue Code (IRC) section 501(c)(3) and its predecessor in April 1951; on November 28, 2001, the Internal Revenue Service (IRS) confirmed its recognition of the exemption under IRC section 501(c)(3). (Stip Facts 8, 9.) Plaintiff is recognized by OSU under Oregon Administrative Rule (OAR) 580-046-0005. (Stip Fact 10.) The bylaws of Plaintiff, adopted May 20, 2005, provide, in relevant part, that:
 "The object and activities of this corporation * * * shall be in general to aid and promote educational and charitable purposes, and in particular the support and furtherance of the educational, charitable, or other lawful activities and purposes of [OSU], all as more particularly set out in the Articles of Incorporation."
(Joint Ex 7G at 27.) The bylaws also provide that, "Trustees and members of committees may receive reimbursements of expenses * * *[;] [t]rustees and committee members shall not otherwise be compensated for service in their capacity as such." (Joint Ex 7G at 30.) Plaintiff's Restated Articles of Incorporation, adopted on May 20, 2005, provide, in part, that:
 "ARTICLE IV The corporation is organized and shall be operated exclusively for charitable, scientific, and educational purposes permitted by Section 501(c)(3) of the [IRC] of 1986, as amended. In particular, the corporation is organized and shall be operated primarily for the benefit of, to perform the functions of, or to *Page 3 
carry out the purposes of [OSU] and any other public institution of higher education, or any successor or affiliated institutions[.]
 "ARTICLE V * * * No part of the net earnings of the corporation shall inure to the benefit of any private shareholder or individual.
 "ARTICLE X Upon dissolution or final liquidation of the corporation, or withdrawal of recognition of the corporation by [OSU], after payment of all the liabilities of the corporation, the remaining assets of the corporation shall be distributed to [OSU], or its successor, or to another tax exempt organization designated by [OSU] pursuant to [OAR] 580-46-005 [sic] of the Oregon State Board of Higher Education's Administrative Rules on Institution Foundation, to be used or the proceeds or income thereof to be used, for charitable, educational, or scientific purposes consistent with the purposes of this corporation, and subject to and in accordance with any terms and conditions to which such assets, income or proceeds were or would have been subject in the hands of the corporation."
(Joint Ex 3C at 15-18.) The July 2008 agreement between Plaintiff and OSU entitled, "Agreement to Provide Services and Facilities in Exchange for Financial Support," states that "[Plaintiff]'s purpose is to aid and promote educational and charitable purposes and lawful activities of [OSU]." (Joint Ex 8H at 35.) The agreement provides that support to OSU from Plaintiff, "may include, but it not limited to:
 "9.01(1) Fundraising and gift solicitation with individuals, corporations, foundations, and other private organizations, which shall be consistent with the UNIVERSITY priorities referred to in 8.10 [sic], [1] and including a capital campaign.
 "9.01(2) Supporting the OSU [fund and program] through specific fundraising from individuals and corporations, fund investment and management, issuance of tax credit certificates, record keeping, and report preparation[.]
 "9.01(3) Participating in the development of strategic goals, priorities and plans for fundraising for [OSU].
 "9.01(4) Receiving, investing, and administering funds for charitable, scientific, and educational activities of [OSU]. *Page 4 
 "9.01(5) Supporting [OSU] by means of funds donated to [Plaintiff] and consistent with such restrictions as meet [OSU] guidelines or have been approved by [OSU]. Funding is normally provided for purchase of [OSU] equipment and supplies; faculty travel; support of research by selected faculty, staff, and students; funding faculty chairs; providing scholarships to students, donor and employee recognition, carrying out other activities of [OSU] involving educational, research, cultural, scientific, public service, outreach and other charitable activities and lawful purposes of [OSU]. All such support shall be in accordance with [Plaintiff]'s purposes as stated in its current Articles of Incorporation and Bylaws and [OSU]'s classification by the [IRS] as a tax exempt organization under [IRC Section 501(c)(3)].
 "9.01(6) Serving as an instrument for entrepreneurial activities for [OSU], including engaging in such activities as purchasing, developing, or managing real estate for [OSU] expansion, student housing or other purposes; holding equity shares which [OSU] has received in connection with the license of [OSU] technology; and advancing and guaranteeing funds based on fundraising pledges in order to further the interests of [OSU]."
(Joint Ex 8H at 40, 41.) The Gift Acceptance Policy and Guidelines state that, "[Plaintiff] aids and promotes excellence in the educational, research, and service activities of [OSU] by seeking, receiving, and administering private gifts for the benefit of [OSU]. (Joint Ex 10J at 48.)
For fiscal year 2007-08, Plaintiff had 117 regular employees, of whom 33 were development officers, 27 were development support personnel, and 57 were administrative staff; in addition, Plaintiff employed 57 OSU students on a part-time basis, of whom 48 worked in Plaintiff's fund solicitation call center, 2 assisted the development staff, and 8 provided administrative support. (Stip Facts 14, 15.) Administrative "functions can be broken down into two categories: (1) investment of funds, and (2) disbursement of funds to OSU." (Schauble Aff at 2.) The administrative staff is responsible for hiring outside investment companies to manage the endowment and trust funds and for monitoring the activity of the investors to verify that each management company has implemented necessary audit procedures. (Id.) Plaintiff is the trustee for its funds held in trust. (Id.) Plaintiff "employs three staff member who are responsible for distributing donations and earnings to OSU." (Id. at 3.) *Page 5 
Development officers are "expected to actively seek out and cultivate relationships with new potential donors. (McLennan Aff at 2.) In addition to developing donor relations by phone, email and letters, development officers are required to conduct face-to-face visits with donors." (Id.) Plaintiff tracks the performance of development officers by monitoring the number and amount of gifts received. (Id. at 3.) Each development officer has specific goals including a "set dollar amount that he or she is expected to procure, * * * maintain[ing] relationships with approximately 125 donors, [and] spend[ing] approximately 75 to 80 percent of his or her time on these development activities, and the remainder on administrative duties." (Id.)
For fiscal year 2007-08, Plaintiff reported total revenue in the amount of $107,372,229 on its Federal, 2007 Return of Organization Exempt from Income Tax.[2] (Ptf's Ex 8 at 1.) According to the Independent Auditor's Report and Consolidated Financial Statements dated September 22, 2008, for the year ending June 30, 2008, Plaintiff's assets totaled $567,442,254 including cash and cash equivalents, investments, net pledges receivable, net property and equipment, assets held-for-sale, charitable trusts held outside, and other assets. (Joint Ex 11K at 65.) Plaintiff's expenses totaled $94,973,619 including "direct university support, other investment expenses, and management, general, and development expenses." (Id. at 66.) Direct university support, included the following amounts:
Awards and scholarships $10,937,514
Capital programs $15,534,191
Instruction and research support $15,356,410
Other program support $21,528,271
Development support $6,233,833
Total Direct University Support $69,410,219
 *Page 6 
(Id. at 83.) Other investment expenses totaled $8,557,415; management, general, and development expenses totaled $17,005,985. (Id. at 66.) Plaintiff paid to OSU amounts that included $3,596,906 to fund need-based scholarship awards, and its gross revenues included a total of $19,492,246 that consisted of donations of principal amounts intended to fund "endowments." (Stip Facts 12, 13; Joint Ex 11K at 66.) "In the case of such endowments [, Plaintiff] was bound by agreement with the donors to invest the principal amounts and use the earnings to fund specified donations to OSU." (Stip Fact 13.)
Plaintiff contends that all of its activities further its charitable purpose of supporting OSU. (Ptf's Mot for Summ J at 17.) Defendant contends that the amounts given do not satisfy the gift or giving element because that element "cannot be satisfied by giving to those who are not poor or needy." (Def's Cross Mot for Summ J at 16.)
 II. ANALYSIS
ORS 307.130[3] provides a property tax exemption for properties owned and used by charitable organizations. ORS 307.130 states, in relevant part:
 "(2) Upon compliance with ORS 307.162, the following property owned or being purchased by art museums, volunteer fire departments, or incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:
 "(a) Except as provided in ORS 748.414, only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions."
The burden of proving entitlement to an exemption is on the person claiming the exemption. In analyzing exemption cases, the court is guided by the principle that taxation is the rule and exemption from taxation is the exception. Dove Lewis Mem. Emer. Vet.Clinic v. Dept. of Rev., 301 Or 423, 426-27, 723 P2d 320 (1986). Courts are to construe exemption statutes with a strict, *Page 7 
yet reasonable construction to achieve the legislature's intent.SW Oregon Pub. Def. Services v. Dept. of Rev.,312 Or 82, 88-89, 817 P2d 1292 (1991). "Strict but reasonable construction does not require the court to give the narrowest possible meaning to an exemption statute. Rather it requires an exemption statute to be construed reasonably, giving due consideration to the ordinary meaning of the words of the statute and the legislative intent." North Harbour Corp. v. Dept. ofRev., 16 OTR 91, 95 (2002).
To qualify for a charitable exemption, an entity must be organized as a nonprofit corporation. OAR 150-307.130-(A)(1)(b).[4]
Plaintiff has been organized as an Oregon nonprofit corporation since 1947 and has been recognized by the IRS as income tax exempt since 1951. (Stip Facts 7-9.) Thus, Plaintiff satisfies this initial test; however, a corporation's nonprofit status does not "conclusively endow it with the attributes of a charity * * * whether a corporation is a charity is to be determined not only from its charter, but also from the manner in which it conducts its activities." OAR 150-307.130-(A)(1)(b). To qualify for exemption under ORS 307.130, an organization must satisfy three requirements:
 "[T]here are three elements to qualifying as a `charitable institution' under ORS 307.130: (1) the organization must have charity as its primary, if not sole, object; (2) the organization must be performing in a manner that furthers its charitable object; and (3) the organization's performance must involve a gift or giving."
SW Oregon Pub. Def. Services, 312 Or at 89.
A. Charity as its primary, if not sole, object
In determining whether a corporation has charity as its primary object, the courts look to the corporation's articles and bylaws.See Dove Lewis Mem Emer. Vet. Clinic,301 Or at 427. (citations omitted). In Methodist Homes, the court examined the provisions of the articles for *Page 8 
consistency with "generally accepted concepts pertaining to charitable trusts and charitable corporations; namely, that charitable trusts continue in perpetuity and that a charitable corporation is merely a trustee or agent for administering funds given for charitable purposes." Methodist Homes, Inc. v. TaxCom., 226 Or 298, 317-18, 360 P2d 293 (1961). Plaintiff's Articles of Incorporation state that it is "organized and shall be operated exclusively for charitable, scientific, and educational purposes * * * and shall be operated primarily for the benefit of, to perform the functions of, or to carry out the purposes of [OSU;]" that "[n]o part of the net earnings of the corporation shall inure to the benefit of any private shareholder or individual[;]" and that,
 "Upon dissolution or final liquidation of the corporation, or withdrawal of recognition [by OSU] * * * the remaining assets of the corporation shall be distributed to [OSU] or its successor, or to another tax exempt organization designated by [OSU] pursuant to [OAR 580-46-005] of the Oregon State Board of Higher Education's Administrative Rules on Institution Foundation[s.]"
(Joint Ex 3C at 15-17.) Plaintiff's Bylaws state that its object and activities "shall be" to "support and furth[er the] * * * lawful activities and purposes of [OSU.]" (Joint Ex 7G at 27.) The articles and bylaws explicitly protect the funds donated for the support of the charitable and educational activities and purposes of OSU by preventing those funds from being used for private advantage and by providing that the surplus funds will continue to benefit OSU, its successor, or its designee. Based on the stated operations, objectives, and activities in its articles and bylaws, the court finds that Plaintiff has charity as its primary object.
B. Performs in a manner that furthers its charitableobject.
In determining whether a corporation is performing in a manner that furthers its charitable object, the courts look to the activities and actual uses of the property. See HazeldenSpringbrook, Inc. v. Yamhill County Assessor, TC-MD No 031037D, WL 1237628 at 7 (May 11, 2004). "This determination must focus on the relationship of the activity or use to the *Page 9 
institution's exempt purposes." Mercy Medical Center,Inc. v. Dept. of Rev., 12 OTR 305, 309 (1992). In addition, a distinction must be made "whether the benefit provided is for the direct good or benefit of the public rather than primarily for the benefit of the organization's members, or simply a by-product of the organization's primary activity." Enterprise for Employment andEducation v. Marion County Assessor, TC-MD 070841C at 6 (Oct 16, 2008). The Legislative Assembly declared higher education to be an important public purpose, stating, in part,
 "Giving due consideration to the historical and continuing interest of the people of the State of Oregon in encouraging * * * citizens to realize their aspirations for higher education, the [assembly] declares that higher education for residents of Oregon * * * is an important public purpose."
ORS 351.005 (emphasis added). The Oregon University System consists of the programs, activities and institutions of higher education including OSU. ORS 352.002.
Plaintiff's stated purpose is to "support educational, research, and service activities of [OSU]." (Joint Ex 6F at 26.) Plaintiff contracted with OSU to provide financial support, which includes, but is not limited to: (1) fundraising and gift solicitation including a capital campaign; (2) specific fundraising from individuals and corporations, fund investment and management, issuance of tax credit certificates, record keeping, and report preparation; (3) participating in the development of strategic goals, priorities and plans for fundraising for OSU; (4) receiving, investing, and administering funds for charitable, scientific, and educational activities of OSU; (5) supporting OSU by means of funds donated to Plaintiff; and (6) serving as an instrument for entrepreneurial activities for OSU. (Joint Ex 8H at 40, 41.)
"[Plaintiff] aids and promotes excellence in the educational, research, and service activities of [OSU] by seeking, receiving, and administering private gifts for the benefit of [OSU]. (Joint Ex 10J at 48.) The property is used to provide offices for its employees, including development officers and administrative staff. (Stip Fact 14.) Development officers solicit *Page 10 
funds from donors by phone, email, and letters, as well as face-to-face meetings. (McLennan Aff at 3.) Administrators oversee the investment of endowment and trust funds and distribute donations and earnings to OSU. (Schauble Aff at 2, 3.) Plaintiff uses the offices to solicit, oversee, and distribute funds to support OSU; therefore, it uses the property exclusively to serve its exempt purposes. It does so at no benefit to itself, any private shareholder or individual, or its trustees or committee members.
C. Performance must involve a gift or giving.
In determining whether a corporation is performing in a manner that involves a gift or giving, the courts look to the organization's activities, relating to those it serves. OAR 150-307.130-(A)(3)(d). "[T]he essence of charity isgiving." Corp. of LDS v. Dept. of Rev.,14 OTR 244, 251 (1997). (emphasis in original). In LDS, even though no giving had occurred, the court found that the intended charitable use was clear because there was no evidence that the taxpayer had any other purpose in operating its facility and held that the exemption was appropriate under ORS 307.130. Id. For an institution to be charitable, "it is essential that such conduct involve a degree of giving." Oregon Country Fair v. Dept. ofRev., 10 OTR 200, 204 (1986). A "bright line test for giving has not been determined." Hazelden, TC-MD No 031037D at 11.
There is no evidence that Plaintiff has any purpose other than providing support to OSU. For fiscal year 2007-08, Plaintiff provided $69,410,219 in Direct University Support. (Joint Ex 11K at 66, 83.) Plaintiff's total revenue in the same year was $107,372,229. (Ptf's Ex 8 at 1.) Direct giving to OSU in fiscal year 2007-08 accounted for 65 percent of Plaintiff's total revenue. The intended purpose of Plaintiff is clear, and the direct giving of Plaintiff involves a significant degree of giving. *Page 11 
 III. CONCLUSION
Plaintiff is exempt from taxation under ORS 307.130 because its activities are charitable, the property is used exclusively to accomplish its charitable goals, and its activities involve a giving through direct gifts to OSU. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs appeal of Defendant's denial of exemption under ORS 307.130 is granted;
IT IS FURTHER DECIDED that Plaintiffs Motion for Summary Judgment is granted; and
IT IS FURTHER DECIDED that Defendant's Response and Cross-Motion for Summary Judgment is denied.
Dated this ______day of October 2010.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Magistrate Jeffrey S. Mattsonon October 5, 2010. The Court filed and entered this documenton October 5, 2010.
[1] Paragraph 8.10 refers to the financial support provided by OSU to Plaintiff for operating costs. Paragraph 8.11 states, "[OSU] shall provide to [Plaintiff,] on a biennial basis, its priorities for [Plaintiff's] fundraising efforts." (Joint Ex 8H at 40.)
[2] Plaintiff reported $107,372,229 in total revenue on Form 990 (2007), calculated from $84,266,683, total revenue, gains, and other support per audited financial statements; plus $26,390,037, net unrealized gains on investments; minus $3,284,491, income of affiliates. (Ptf's Ex 8 at 5, 28; Joint Ex 11K at 66.)
[3] All references to the Oregon Revised Statutes (ORS) are to 2007.
[4] All references to the Oregon Administrative Rules (OAR) are to 2007.