IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

OREGON CENTER FOR PUBLIC POLICY, )
 )
   Plaintiff, ) TC-MD 160308G
 )
  v. )
 )
MULTNOMAH COUNTY ASSESSOR, ) **ORDER DENYING PARTIES'**
 ) **CROSS-MOTIONS FOR SUMMARY**
   Defendant. ) **JUDGMENT**

On cross-motions for summary judgment, this case concerns whether a "think tank" is a

charitable institution entitled to claim a property tax exemption under ORS 307.112 and

307.130.[1,2]  Plaintiff's Complaint appealed Defendant's denial of such an exemption to leased

property identified as Account R273096 (the subject property) for the 2016–17 tax year.  Oral

argument on the parties' motions was held March 17, 2017.  Plaintiff's Executive Director,

A. Charles Sheketoff, appeared on its behalf.  Carlos A. Rasch, Assistant County Attorney,

appeared on Defendant's behalf.

## I.  STATEMENT OF FACTS

The following facts are drawn from the parties' Stipulation of Facts. Additional facts

appear where pertinent in the analysis.

According to Plaintiff's bylaws, its primary purpose during the year at issue was "to

study issues pertinent to the needs of Oregonians for human services, to develop standards to

measure the effectiveness of human services programs, and to educate the public about these

/ / /

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2015.

[2] Plaintiff's representative described his organization as a "think tank" during oral argument.

programs." Plaintiff performed most of its work at the subject property—its office—which it began leasing in March 2016.

In the words of the parties' stipulation, "[Plaintiff's] work explains to the public how complex public policies impact their lives." Plaintiff did this explaining in a variety of ways, free of charge. It published research on its website. It sent e-mails. It accepted invitations to speak at public events. It responded to requests for information from all inquirers, including members of the media, government officials, and members of the public.

Plaintiff was recognized by the Internal Revenue Service as a tax-exempt organization under IRC sections 501(a) and 501(c)(3). Plaintiff's articles provide for distribution of its assets upon dissolution for exempt purposes, and disallow the inurement of any part of its net earnings to private persons. Plaintiff accounts for the funds and donations committed to its charitable use.

Defendant denied Plaintiff's claim for property tax exemption by letter dated June 17, 2016. The reason stated for the denial in the letter was that Plaintiff did not "qualify in accordance with ORS 307.130." Plaintiff asks the court to overturn that denial by finding the subject property was entitled to property tax exemption. Defendant asks the court to sustain its denial of exemption.

## II. ANALYSIS

The ultimate issue in this case is whether the subject property was exempt from taxation under ORS 307.112. ORS 307.112(1) allows a tax exemption to property leased and used by an organization that would be entitled to exemption for similar use of its own property, provided that the rent reflects tax savings from the exemption, and the lease expressly agrees the rent reflects those savings. A charitable institution is one type of organization entitled to claim tax exemption for its own property. ORS 307.130(2).

Here, the parties dispute whether Plaintiff is a charitable institution, whether Plaintiff's lease expressly agreed that its rent reflected tax savings, and whether Plaintiff's rent actually reflected tax savings. The court addresses each issue in turn.

A.    *Whether Plaintiff is a Charitable Institution under ORS 307.130*

Charitable institutions under ORS 307.130 must meet certain organizational requirements—they must be nonprofit corporations, separately accounting for funds and donations committed to charitable use, not operating for the private advantage of the founders and officers, and having articles or bylaws requiring their assets be used for charitable purposes upon dissolution. OAR 150-307-0120(2).[3] There is no dispute that Plaintiff met those organizational requirements.

In addition to being properly organized, a charitable institution exhibits three traits: "(1) [T]he organization must have charity as its primary, if not sole, object; (2) the organization must be performing in a manner that furthers its charitable object; and (3) the organization's performance must involve a gift or giving." *SW Oregon Pub. Defender. Services v. Dept. of Rev.*, 312 Or 82, 89 (1991). Here, Defendant disputes the presence of the first and third traits.

1.    *Charity as primary object*

Defendant argues that Plaintiff's object is not charitable. Defendant relies on a Magistrate Division case, *Native Forest Council v. Lane County Assessor*, 17 OTR-MD 30 (2001), for the proposition that "[e]ducating the public on a particular point of view is not providing charity. Charity must be more direct and substantive to the recipient." In *Native Forest Council*, the court held that the object of an organization formed to promote a political ideology by educating the public was not charitable; rather, it was "to educate." 17 OTR-MD at

_____
[3] Oregon Administrative Rules (OAR)

35–36.  The case did not further analyze its unstated major premise that education is not a charitable purpose.

The court will first consider whether education is, in fact, a charitable purpose under ORS 307.130(2).  The court will then consider the effect of the prohibition under IRC section 501(c)(3) of engaging in propaganda or attempting to influence legislation.

> a.    Education as charitable purpose

In light of Oregon's broad definition of charity, this court is unable to agree with the statement in *Native Forest Council* contrasting education with charitable activity.  OAR 150-307-0120(5)(c) defines a charitable object as one that is "good or beneficial for humans and other living things."  Education, which imparts knowledge, appears to meet that definition.  The analysis in *Native Forest Council* did not provide authority for excluding education from the definition of charity and the court is now unable to locate such authority.

The court considers and rejects the argument that ORS 307.130(2) excludes education from the definition of charity because it does not include the word *education*.  That argument compares the text of ORS 307.130(2) with that of ORS 307.140(1), which does include education.  ORS 307.130(2) states, in pertinent part:

> "(2) Upon compliance with ORS 307.162, the following property owned or being purchased by art museums, volunteer fire departments, or incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:
>
> "(a) Except as provided in ORS 748.414, only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions.
>
> "* * * * *."

/ / /

ORS 307.140(1) states that "the following property owned or being purchased by religious organizations shall be exempt from taxation":

> "(1) All houses of public worship and other additional buildings and property used solely for administration, *education*, literary, benevolent, charitable, entertainment and recreational purposes by religious organizations, the lots on which they are situated, and the pews, slips and furniture therein. However, any part of any house of public worship or other additional buildings or property which is kept or used as a store or shop or for any purpose other than those stated in this section shall be assessed and taxed the same as other taxable property."

(Emphasis added.) "Ordinarily, when the legislature includes an express provision in one statute, but omits such a provision in another statute, it may be inferred that such an omission was deliberate." *Oregon Bus. Planning Council v. Dept. of Land Conservation and Dev.*, 290 Or 741, 749, 626 P2d 350 (1981); *see also PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (stating principle as applying to different sections within one statute).[4] The inference might be drawn that, by specifically including education among the exempt uses of religious organizations' property while omitting it from the list of exempt works of a charitable institution, the legislature intended to exclude education from the purposes of charitable institutions. However, that inference does not bear up under closer examination.

The lists in ORS 307.130(2) and 307.140(1) differ importantly—in particular, ORS 307.140(1) is an exclusive list, while ORS 307.130(2) is not. The former statute explicitly denies exemption to property used "for any purpose other than those stated in this section." ORS 307.140(1). ORS 307.130(2) lacks such a definitive statement, and Oregon Supreme Court precedent shows that it is not an exclusive list.

If the "literary, benevolent, charitable and scientific institutions" of ORS 307.130(2) were a simple catalog of permissibly exempt organizations, then each type of listed institution would

---

[4] This is the canon *expressio unius est exclusio alterius*.

independently qualify for tax exemption. Under that theory, a "literary" or "scientific" institution might qualify for exemption even if it were not "charitable." The Oregon Supreme Court considered and rejected that possibility in *Behnke-Walker Business College v. Multnomah County*, 173 Or 510, 146 P2d 614 (1944). In that case, a for-profit business school claimed a tax exemption as a literary or scientific institution. Invoking the principle that "[a]ssociated words explain and limit each other," the Oregon Supreme Court quoted extensively from a Massachusetts decision interpreting the phrase "literary, benevolent, charitable and scientific institutions." *Behnke-Walker*, 173 Or at 518–19, quoting *Bd. of Assessors v. Garland Sch. of Home Making*, 296 Mass 378, 6 NE2d 374 (1937). Under the reasoning of the Massachusetts case, references to literary and scientific institutions expand the definition of a charitable institution by clarifying that "the exemption given by the statute is not restricted to institutions having the narrow charitable purpose of relief of the poor or sick." *Id*. at 519. Literary and scientific institutions do not independently qualify for exemption where they are not charitable. *Id*. In Oregon, therefore, only public charities qualify for exemption. *Id*. at 519–20.[5]

The list of ORS 307.130(2) thus serves a different purpose than the list of ORS 307.140(1). The first list serves to broaden the understanding of charity. The second list serves to restrict the uses of religious organizations' property. The use of the word *education* in ORS 307.140(1) does not imply that education is excluded from the expansive view of charity adopted by ORS 307.130(2).

It is true that a broad definition of charity under ORS 307.130(2) creates "the potential for disagreement as to whether a particular activity is of benefit to mankind." *Oregon Country Fair v. Dept. of Rev.*, 10 OTR 200, 205 n 3 (1986). In *Oregon Country Fair*, the taxpayer's

---

[5] Because the taxpayer was organized for private profit, the court did not reach the question of whether a nonprofit educational institution might qualify for tax exemption. *Behnke-Walker*, 173 Or at 526.

purposes were "to promote the arts and crafts, the exchange of ideas, the establishment of a community feeling of unity and enhance an earth-life harmony philosophy." *Id*., 10 OTR at 205. The court agreed that the taxpayer's purposes were beneficial, but held those purposes were not charitable, applying the word *charitable* in its "narrow and traditional sense of relieving pain, alleviating disease or removing constraints." *Id*., citing *Benton County v. Allen*, 170 Or 481, 485, 133 P2d 991 (1943); *but see Behnke-Walker*, 173 Or at 519–20. Despite the court's concerns about generating disagreement, the legislature acted swiftly to overturn the "narrow and traditional" definition of charity applied in *Oregon Country Fair*. *See Young Mens Christian Ass'n of Columbia-Willamette v. Dept. of Rev.,* 308 Or 644, 652, 784 P2d 10866 (1989) (agreeing that 1987 amendments to ORS 307.130 responded to and overturned part of *Oregon Country Fair*). ORS 307.130(5) was enacted, stating: "An institution shall not be deprived of an exemption under this section because its purpose or the use of its property is not limited to relieving pain, alleviating disease or removing constraints."

Although the Supreme Court has not explicitly discussed whether education is a charitable purpose, it has held educational institutions entitled to tax exemption under ORS 307.130. *See Multnomah Sch. of the Bible v. Multnomah Co.*, 218 Or 19, 36–37, 343 P2d 893 (1959) (describing exempt charitable institution as "institution of learning"); *Willamette Univ. v. State Tax Comm'n*, 245 Or 342, 343, 422 P2d 260 (1966), discussed in *Habitat for Humanity of the Mid–Willamette Valley v. Dept. of Rev.*, 360 Or 257, 263, 381 P3d 809 (2016) ("Because the university was in the process of constructing buildings intended to advance its educational purposes, there was no dispute that the property * * * was 'being prepared to carry out the purposes of the exempt charity.' ") The Regular Division of this court has also allowed a tax exemption under ORS 307.130 to an organization with an educational purpose. *See Lewis &*

*Clark Coll. v. Comm'n*, 3 OTR 429 (1969) (accepting parties' agreement that college was exempt institution under ORS 307.130).

Considering the broad meaning of *charitable* found in ORS 307.130, as well as the definition provided in OAR 150-307-0120(5)(c) ("good or beneficial for humans and other living things"), the court concludes that education is a charitable purpose.

    b.  Engaging in propaganda or attempting to influence legislation

Defendant contends that Plaintiff's advocacy for "certain social and political issues" detracts from any charitable value its educational efforts might have, and that Plaintiff may have engaged in lobbying activities. Defendant does not develop its argument or cite authority. However, the court understands Defendant to have challenged whether Plaintiff violated the prohibition on propaganda found in Internal Revenue Code (IRC) section 501(c)(3).

Although educational purposes are charitable, an organization that engages in propaganda or attempts to influence legislation may fail to comply with IRC section 501(c). Compliance with IRC section 501(c)(3) is one method of meeting the definition of a "nonprofit corporation" under ORS 307.130(c); the other method is by being organized pursuant to ORS chapter 65. Charitable institutions must be organized as nonprofit corporations to qualify for exemption under ORS 307.130. OAR 150-307-0120(2)(b); *Behnke-Walker*, 173 Or at 520 (holding only property of nonprofit corporations may qualify for exemption under ORS 307.130).

IRC section 501(c)(3) disallows a tax exemption to organizations for which a substantial part of their activities consists in "carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h))." IRC section 501(h)(2) cross-references the definition of "influencing legislation" found at IRC section 4911(d), which states, in pertinent part:

"(1) General rule.—Except as otherwise provided in paragraph (2), for purposes of this section, the term "influencing legislation" means—

"(A) any attempt to influence any legislation through an attempt to affect the opinions of the general public or any segment thereof, and

"(B) any attempt to influence any legislation through communication with any member or employee of a legislative body, or with any government official or employee who may participate in the formulation of the legislation.

"(2) Exceptions.—For purposes of this section, the term "influencing legislation", with respect to an organization, does not include—

"(A) making available the results of nonpartisan analysis, study, or research;

"* * * * *."

The exception for "nonpartisan analysis, study, or research" includes any activity that is "educational." 26 CFR § 56.4911–2(c)(1)(ii). The term *educational* is defined by 26 CFR § 1.503(c)(3)–1(d)(3):

"The term educational, as used in section 501(c)(3), relates to:

"(a) The instruction or training of the individual for the purpose of improving or developing his capabilities; or

"(b) The instruction of the public on subjects useful to the individual and beneficial to the community.

"An organization may be educational even though it advocates a particular position or viewpoint so long as it presents a sufficiently full and fair exposition of the pertinent facts as to permit an individual or the public to form an independent opinion or conclusion. On the other hand, an organization is not educational if its principal function is the mere presentation of unsupported opinion."

*See also* Rev Proc 86-43, 1986-2 CB 729 (IRS RPR 1986) (identifying four factors not typically found where organization's viewpoint advocacy is educational).

/ / /

Here, all of Plaintiff's work submitted by the parties supports the conclusion that Plaintiff's viewpoint advocacy was educational within the meaning of 26 CFR § 1.503(c)(3)– 1(d)(3).  Each "fact sheet" provided by Plaintiff stated a conclusion regarding a policy question in its title.  The fact sheets were supported by six to nine pages of data and analysis.  That data was sufficient to allow readers to judge the credibility of Plaintiff's conclusions.  Plaintiff's papers were not "mere presentation of unsupported opinion."  *See id*.

> 2.  *Gift or giving*

While having a charitable object stated in the articles and bylaws is *prima facie* evidence that an organization is charitable, "such *prima facie* evidence as its articles may accord can be rebutted by evidence that the corporation has not in fact lived up to its chartered objects." *Methodist Homes, Inc. v. Tax Comm'n.*, 226 Or 298, 308, 360 P2d 293 (1961).

> "This is a sound and salutary rule. It is one reflecting human experience. Unselfish declarations of intended purpose and promises of future worthy endeavor are many times rendered meaningless by inaction and should give the declarer no preferred status unless ultimately resolved into concrete and tangible reality."

*Id.*, quoted in *Dove Lewis Mem'l Emergency Veterinary Clinic, Inc. v. Dept. of Rev.*, 301 Or 423, 428, 723 P2d 320, 322 (1986); see also OAR 150-307-0120(4)(d) ("Declarations of worthwhile purpose and charitable endeavors must be manifested in concrete endeavors and tangible reality which benefits the recipient.").

The examination of whether an organization's performance involves gift or giving is a way of testing whether it has "lived up to its chartered objects."  In the first place, gift or giving involves "giving something of value to a recipient with no expectation of compensation or remuneration."  OAR 150-307-0120(4)(d).  In the second place, gift or giving involves "concrete endeavors and tangible reality which benefits the recipient."  *Id*.

Here, there is no dispute that Plaintiff did not expect compensation or remuneration from those who read the information provided on Plaintiff's web site or who invited Plaintiff to speak. However, Defendant challenges whether Plaintiff gave "something of value to a recipient." Defendant points out that, while Plaintiff provided its policy research to the public at large, it was legislators and lawmakers who decided whether to implement the policies for which Plaintiff advocated. (Def's Cross-Mot Summ J at 6.)

If the "something of value" that Plaintiff provided were the policies for which it advocated, then Defendant's argument would hold. Plaintiff cannot and did not personally deliver new laws to the people of Oregon. However, Plaintiff does not claim to give new laws; it claims to educate. And education is of value apart from whether any particular policy is enacted into law. Plaintiff's purpose was to educate, and its activities informing the public were educational. Each person whom Plaintiff reached was thus a recipient who received "something of value."

Defendant further suggests that Plaintiff did not give "tangible reality" to a charitable purpose. OAR 150-307-0120(4)(d). Defendant states that the information Plaintiff published on its website was "to promote and educate on its ideologies and policies and is not tangible charity for public benefit." (Def's Cross-Mot Summ J at 7.) If Defendant's argument is that education is not tangible enough to be a charitable purpose, the court disagrees for the reasons given in the section above. While the root meaning of *tangible* is "capable of being touched," the word by extension also means "substantially real," and in that latter sense is applied to realities that cannot actually be touched. *See Webster's Third New Int'l Dictionary* 2337 (unabridged ed

2002). Furthermore, the exemption of ORS 307.130(2) is not limited to institutions performing "corporeal" works of charity. *See* ORS 307.130(5); *Behnke-Walker*, 173 Or at 519.

Plaintiff's work accorded with its stated purpose of educating the public and was performed without expectation of compensation or remuneration. Plaintiff therefore manifested its charitable purpose in tangible reality benefiting a recipient. Plaintiff's performance involved gift or giving.

B.      *ORS 307.112*

The remaining issue is whether Plaintiff qualifies for exemption under the "tax savings" provision of ORS 307.112. Defendant's argument is twofold. First, Defendant contends that Plaintiff's lease did not expressly agree that Plaintiff's rent reflected tax savings below market rent. *See* ORS 307.112(1)(b). Second, Defendant contends that Plaintiff did not provide sufficient documentary proof of tax savings and is now barred from providing more evidence because such evidence could only be provided "at the time of application." *Cf*. OAR 150-307-0060(7).

1.      *Express agreement in lease*

ORS 307.112(1)(b) imposes the following as a condition of receiving a tax exemption on property leased from a taxable owner:

> "It is expressly agreed within the lease, sublease or lease-purchase agreement that the rent payable by the institution, organization or public body has been established to reflect the savings below market rent resulting from the exemption from taxation."

In the present case, the lease of the subject property provided for a rent credit in the amount of any property tax savings:

> "LESSEE is responsible for filing all necessary forms with the required government entities with respect to LESSEE'S 501(c)(3) status for property tax reduction to LESSOR. Any property tax savings LESSOR receives due to

LESSEE'S occupancy and 501(c)(3) status will be passed on monthly to LESSEE in the form of a rent credit. Should LESSEE no longer qualify for 501(c)(3) tax status, any advanced property tax rent credit the LESSEE received shall be reimbursed to the LESSOR."

(Ptf's Resp Def's Mot Summ J at 12–13.) Under that provision, the rent payable by Plaintiff was not necessarily the stated monthly rent obligation (the "lease rent"). Rather, it was the lease rent reduced by a rent credit equal to the property tax savings.

Defendant's challenge to the language of the lease is a legal question. At the stage of evaluating the lease, the court does not consider whether Plaintiff's rent payable actually reflected tax savings below market rent, but only whether such savings were expressly agreed. Therefore, the language of the lease it is not a question of proof. *Cf.* OAR 150-307-0060(10) (statement that lessee is responsible for taxes does not prove tax savings).

An express agreement is one manifested by words, just as an express contract (as opposed to an implied contract) is manifested by words. *Cf. Staley v. Taylor*, 165 Or App 256, 262, 994 P2d 1220 (2000) (regarding express and implied contracts). Nevertheless, ORS 307.112(1)(b) is "not a commandment to parrot the exact statutory words." *The Young Mens Christian Ass'n of the Columbia-Willamette v. Clackamas County Assessor*, TC-MD 020920B, WL 21716480 (Or Tax M Div July 10, 2003) (holding lease provision making lessee responsible for property taxes satisfied requirement for express agreement to tax savings).

Here, Plaintiff's lease presumably did not state that the agreed rent was equal to "market rent."[6] If it did, those words in conjunction with the words of the lease quoted above would unquestionably satisfy ORS 307.112(1)(b). The question then is whether the above-quoted lease provision, in conjunction with a provision for monthly rent, expresses an agreement that Plaintiff would receive tax savings below market rent.

---

[6] The court has not been provided with a copy of the entire lease.

The court finds that the lease's provision that "property tax savings" be "passed on" to Plaintiff is an express agreement that satisfies ORS 307.112(1)(b). Given the words in the lease, it is possible that the parties agreed to a rent above the market rate, such that even with the rent credit Plaintiff's rent payable was not sufficiently below market rent. However, that possibility would require a strained understanding of passing on property tax "savings." A *savings* is "a reduction in cost." *Webster's Third New Int'l Dictionary* 2020 (unabridged ed 2002). In context, a *property tax savings* is a reduction in cost due to tax exemption. If those savings are "passed on" to the lessee, then the lessee receives those savings. Yet if the lessee were paying above market rent, the lessee would not really receive savings from property tax exemption; instead, the lessee would be paying more and assuming more risk than it would have if it rented equivalent space elsewhere. It is unrealistic to suppose that a lessee would agree to such "savings." Considering that a lease is a real agreement between real parties—not a logic exercise—the court finds that the quoted provisions express agreement that Plaintiff's rent payable was reduced below market rent by the amount of the property tax savings.

2. *Documentary proof of tax savings*

Although a lease expresses an agreement regarding tax savings, such an agreement does not necessarily end the inquiry. A lease in the right form may still state a rent that does not reflect tax savings below market rent. A factual determination is necessary.

The initial factual determination is made by the assessor. ORS 307.112(3) obliges lessors (not lessees) to provide "documentary proof" of such savings if the assessor is not satisfied:

> "If the assessor is not satisfied that the rent stated in the lease, sublease or lease-purchase agreement has been established to reflect the savings below market rent resulting from the tax exemption, before the exemption may be granted the lessor must provide documentary proof, as specified by rule of the Department of Revenue, that the rent has been established to reflect the savings below market rent resulting from the tax exemption."

The "rule of the Department of Revenue" specifying the documentary proof is found at OAR 150-307-0060(7) to (10). OAR 150-307-0060(7) provides: "Sufficient documentary proof must be submitted at the time of application." OAR 150-307-0060(8) lists acceptable documentary proof as including current and historic rental data for the subject property's building, the rental rate used to appraise the subject property, and a rent study of comparable similar properties.

Defendant argues that Plaintiff cannot qualify for property tax exemption because it did not submit the documentary proof listed in OAR 150-307-0060(8) at the time it made its exemption claim. In Defendant's view, Plaintiff is now barred from submitting additional evidence to this court regarding market rent and tax savings.

Defendant's argument is not well taken because a taxpayer's right under ORS 305.275(1)(a)(C) to appeal an assessor's "denial of a claim for exemption" includes a right to a new factual determination by this court based on evidence. The Oregon Tax Court has jurisdiction "for the hearing and determination of all questions of law *and fact* arising under the tax laws of this state." ORS 305.410 (emphasis added). The question of whether the rent stated to reflect tax savings in Plaintiff's lease actually did reflect tax savings is a factual question arising out of Defendant's denial. As Defendant rightly points out in response to Plaintiff's charge that it had never raised the issue of documentary proof before, appeals to this court are heard *de novo*. No statute limits the scope of the court's review of Defendant's denial. Plaintiff is therefore entitled to present new evidence of the pertinent facts.[7]

---

[7] Plaintiff raises a significant objection to Defendant's position based on due process grounds. Plaintiff's concern about notice and a right to be heard are cured by its ability to present new evidence to this court.

Because at present the parties are separated by an issue of material fact—whether Plaintiff's lease actually reflected tax savings below market rent—the court cannot grant either party's motion for summary judgment. *See* TCR 47 C. Because under Plaintiff's lease tax savings are passed on through a rent credit, the lease will reflect tax savings below market rent if the stated rent is no greater than market rent.

## IV. CONCLUSION

The court concludes that Plaintiff's educational purpose was charitable and Plaintiff was a charitable institution under ORS 307.130(2). The provision in Plaintiff's lease passing tax savings on to Plaintiff was an express agreement satisfying ORS 307.112(2)(b). The question of whether the lease actually reflected tax savings below market rent is a factual question on which the parties may present evidence at trial if they are unable to agree. Now, therefore,

IT IS ORDERED that the parties' cross-motions for summary judgment are denied.

IT IS FURTHER ORDERED that the parties shall confer and, within 14 days, file a status report proposing next steps to resolve this appeal.

Dated this ____ day of September, 2017.

POUL F. LUNDGREN
MAGISTRATE

***This interim order may not be appealed. Any claim of error in regard to this order should be raised in an appeal of the Magistrate's final written decision when all issues have been resolved. ORS 305.501.***

***This document was signed by Magistrate Lundgren and entered on September 19, 2017.***